```
 1          UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK
 2
      - - - - - - - - - - - - - X
 3
      UNITED STATES OF AMERICA,    :   02-CR-441(JG)
 4                                 :   11-CR-693(JG)
                                   :   11-CR-719(JG)
 5                                 :
          -against-               :   U.S. Courthouse
 6                                 :   Brooklyn, New York
                                   :
 7                                 :   TRANSCRIPT OF
                                   :   PROCEEDINGS
 8    CHRISTOPHER THOMAS,          :
                                   :
 9         Defendant.             :   January 29, 2015
                                   :   2:30 p.m.
10
11    - - - - - - - - - - - - - X
12   BEFORE:
                HONORABLE JOHN GLEESON, U.S.D.J.
13
     APPEARANCES:
14
     For the Government:        LORETTA E. LYNCH, ESQ.
15                              United States Attorney
                                271 Cadman Plaza East
16                              Brooklyn, New York 11201
                                BY:  ALICYN L. COOLEY, ESQ.
17                                   Assistant U.S. Attorney
18
19   For the Defendant:        DAVID STERN, ESQ.
                                LUCAS ANDERSON, ESQ.
20
21
22   Court Reporter:      Holly Driscoll, CSR
                          Official Court Reporter
23                        225 Cadman Plaza East
                          Brooklyn, New York 11201
24                        (718) 613-2274
25   Proceedings recorded by mechanical stenography, transcript
     produced by Computer-Assisted Transcript.
```

1    THE COURT:  Everybody can be seated.  Good

2  afternoon, everyone.

3         You can sit at the table.

4         Welcome back to the longest running violation

5  proceedings in my history.

6         MR. STERN:  Mine too.

7         THE COURT:  Hello, Mr. Thomas.

8         THE DEFENDANT:  Good afternoon, Your Honor.

9         THE COURT:  State your appearances please, counsel.

10        MS. COOLEY:  Good afternoon, Your Honor, Alicyn

11  Cooley for the United States.

12        THE COURT:  Good afternoon.

13        MR. ANDERSON:  Lucas Anderson and David Stern for

14  Mr. Thomas, Your Honor.  Good afternoon.

15        THE COURT:  Good afternoon.  Okay.  You're back.

16  We had a couple of days of evidentiary hearing, the last one

17  was December 15th 2014.  There was a requested opportunity to

18  do some briefing, I got some briefing.  I want to be sure

19  where we are procedurally because docket numbers are flying

20  all over the place here.  There's that old case in front of

21  me, 02-441, and then there are two more recent docket numbers,

22  11-719 and 11-693, and I'm saying all this out loud so you can

23  correct me where I go wrong.  Both of these latter two docket

24  numbers are transfers from the Southern District I think; is

25  that right?

1    MS. COOLEY:  Your Honor, I think -- I could be

2 mistaken -- I think that 11-CR-693 is.  I believe that there

3 was an additional docket number created for the violation

4 proceeding, I'm not positive, but I thought that 11-CR-719

5 might be the newest and I don't know that that's a separate

6 transfer.

7    THE COURT:  I want to cover this underbrush.

8    Let's skip to the punch line, there's a single

9 outstanding alleged violation before me because there was a

10 timing problem with regard to some other alleged violations, I

11 dismissed those for reasons I wrote about, and the only timely

12 violation is this public lewdness violation; is that correct,

13 Mr. Stern?

14    MR. STERN:  That is correct, yes.

15    THE COURT:  All right.  You agree with that,

16 Ms. Cooley?

17    MS. COOLEY:  Yes, Your Honor.

18    THE COURT:  And both docket sheets begin with

19 transfer of jurisdiction requests from Southern New York to

20 Eastern New York.  So, at some point someone should tell me

21 what docket number goes on whatever disposition arises from

22 today's proceedings because I'm not sure which one it is.

23    MS. COOLEY:  Your Honor, we can file something later

24 this afternoon clarifying that.

25    THE COURT:  Okay, good.

1       Anything further by way of oral argument?  I've

2  gotten your letters.  Anything further from the government

3  with regard to the question whether Mr. Thomas is guilty of

4  engaging in public lewdness?

5          MS. COOLEY:  No, Your Honor.

6          THE COURT:  There was a communication from you to

7  chambers regarding access to exhibits.

8          MS. COOLEY:  Yes, Your Honor.  There was a request

9  made by the press to the government for two exhibits, one

10  being a photograph, a surveillance photograph of the

11  defendant.  We identified one that we thought was most

12  appropriate based on the request, it is Government Exhibit

13  5B-1a, and the other exhibit that was requested was Exhibit 15

14  which is the hand drawn sketch of the eyewitness to the lewd

15  conduct, Ms. Ogiura, and after consultation internally we

16  decided that, with the Court's permission, we would be

17  comfortable releasing the photograph of the defendant,

18  however, we would leave it to the Court, assuming the press

19  makes an application directly to the Court, to release the

20  hand drawn sketch made by the victim.

21          THE COURT:  Okay.  Just so the record is clear,

22  because you mentioned a hand drawn sketch of the eyewitness,

23  it is a hand drawn sketch by the eyewitness --

24          MS. COOLEY:  That's correct, Your Honor.

25          THE COURT:  -- of the person she claimed was out in

1  the hallway masturbating.

2          MS. COOLEY:  That's right.

3          THE COURT:  You want to be heard on these?  I'll

4  tell you my take on it, they're exhibits in evidence in a

5  public proceeding, I don't see any reason not to direct the

6  disclosure by the government of both exhibits but you can take

7  a crack at it.

8          MR. STERN:  Whether I like it or not, I think that's

9  true.

10         THE COURT:  It is true.  It also must be a very slow

11 news day.

12         Anything you want to add to your written submission,

13 sir?

14         Your name is Anderson, correct?

15         MR. ANDERSON:  Anderson, correct, Your Honor.  I

16 just received the government's submission a few hours ago but

17 I think it sort of aligns with what the actual test is with

18 regards to how somebody violates this statute.  It is sort of

19 a technical definition.  Public place is not defined in the

20 statute and there have been cases from the Court of Appeals

21 and one from Your Honor regarding what that actually entails

22 and I think it bears emphasizing in this case that the

23 evidence was that the person who engaged in this conduct did

24 take measures to conceal his behavior, backed up against the

25 corner where there were lockers, there's no evidence that

1  there were people walking back and forth, there's no evidence

2  that anybody else saw him.  This took place for a very, very

3  short period of time was I think Ms. Ogiura's testimony.  So,

4  I think all that, you know, is very, very similar to Your

5  Honor's opinion in the Paine case where even though there was

6  conduct, whether it was conduct that was welcome, directed at

7  one other person, it was not conduct that would violate the

8  sensibilities of innocent passersby and I think that's who the

9  statute is aimed at protecting and there were measures taken

10 by the person who did this to protect against that from

11 happening, it was directed at one person, it was unwelcome,

12 that's -- I'll stipulate that, that might be a crime but that

13 is not public lewdness --

14         THE COURT:  Why not?

15         MR. ANDERSON:  -- within the definition of the

16 statute because --

17         THE COURT:  Assuming I find that it was

18 intentionally directed at this witness who testified.

19         MR. ANDERSON:  Correct, because it's passersby.  The

20 case refers -- McNamara, I believe is the name of the Court of

21 Appeals case, it is an objective test where the objective

22 facts establish that the lewd act, quote, can and likely would

23 be seen by a casual passerby whose sensibilities the statute

24 seeks to protect.

25         Now, in the Paine case there was an individual, I

1   believe it was a law enforcement officer who was, you know,

2   getting unwelcome -- the defendant in that case was engaging

3   in lewd conduct, his behavior was directed solely at one

4   person, that law enforcement officer, he was being sort of

5   secretive about it, he was directing his conduct towards one

6   person, that's quite similar to what happened in this case if

7   not exactly the same.

8          Ms. Ogiura testified that the person she saw in the

9   hallway sort of checked her out, left, came back and all of

10  his attention was directed solely at her.  He took measures to

11  conceal himself.  There were no cameras in that part of the

12  hallway, there's no evidence that there was anybody else

13  there, he was backed up against a corner and it took place for

14  a very, very short period of time and so I just don't think

15  you can say that that conduct, while it may be offensive,

16  while it certainly may have been offensive to Ms. Ogiura, it

17  did not offend the sensibilities of innocent passersby.

18         THE COURT:  Why can't she be the casual passerby,

19  because she's sitting down?

20         MR. ANDERSON:  She wasn't a casual passerby at the

21  time, she was sort of the object of this individual's

22  unwelcome actions, just like the law enforcement officer in

23  Paine who was there who was sitting in their car.

24         THE COURT:  He was inviting it basically, he was an

25  undercover.

1     MR. ANDERSON:  But Your Honor --

2     THE COURT:  Are you saying it is okay if he

3 specifically targeted her but not okay if he didn't

4 specifically target her but she happened to see it from

5 inside --

6     MR. ANDERSON:  Okay within the meaning of this

7 objective test which pertains to passersby.

8         In Paine Your Honor wrote it did not matter whether

9 Casey, the law enforcement officer in that case who was

10 receiving these unwelcomed lewd acts from the defendant, was

11 in fact surprised, it did not matter whether he was surprised,

12 whether he expected it, whether he wanted it because the

13 McNamara test is an objective one.

14         So, that's why I think that the facts of that case

15 are squarely on point with this because there was an

16 individual to whom acts were specifically directed unwantedly

17 but the acts there, as here, did not meet the test as to

18 whether they would offend the sensibilities of a casual

19 passerby.

20     THE COURT:  Okay.

21     MR. ANDERSON:  Thank you.

22     THE COURT:  I understand the argument.  I disagree

23 with it.  I don't think the undercover in the car on the pier

24 in that case of mine -- what year was that case?  That's a

25 long time ago.

1          MR. ANDERSON:  1997.

2          THE COURT:  Was the sort of person whose

3    sensibilities the statute seeks to protect.  He went out there

4    and induced Paine to engage in the act that got Paine enmeshed

5    in the federal criminal justice system.  I remember vividly

6    characterizing that as a real get a life investigation and

7    prosecution, you go out three o'clock in the morning to a

8    place where folks who are known to engage in that kind of

9    activity and induce Paine to do it.

10          Here this was an innocent member of the public and

11   in my view the objective circumstances in this case make clear

12   that the lewd act that Mr. Thomas is alleged to have engaged

13   in not likely but definitely would be seen by this young

14   student whose sensibilities the statute seeks to protect, to

15   paraphrase from Judge Kaye's decision in McNamara, 78 NY2d 626

16   at 633 to 634.

17          I find based on the testimony elicited over two

18   separate days by a preponderance of the evidence that it was

19   indeed Mr. Thomas in the hallway of the building at Pratt.  I

20   credit the testimony of the victim.  I find that he engaged in

21   public lewdness as articulated in the relevant section of the

22   penal code, so I find him guilty.

23          Do you want to be heard with regard to the

24   appropriate sanction, sir?

25          MR. ANDERSON:  Yes, Your Honor.  I want to first off

1　note that this offense took place in November of 2011, over

2　three years ago, and since that time Mr. Thomas has been

3　sentenced by Judge Marrero in the Southern District in

4　connection with another case to 109 months imprisonment and

5　three years of supervised release.

6　　　　　THE COURT:  How far into that term is he, what is

7　his projected release date as of today?

8　　　　　MR. STERN:  I think that he has about six years to

9　go.  I don't know the exact release date but it's in that

10　ballpark.

11　　　　　THE COURT:  Okay.

12　　　　　MR. ANDERSON:  So, he has a record of criminal

13　history and he is being punished for that record but I think

14　it is important to note that he doesn't have a record of

15　violence, he's not a gang member, he's not some irredeemably

16　antisocial person and I don't think there's any reason to

17　believe that more time in prison beyond that sentence that

18　he's already received and the supervised release due

19　afterwards will do anything to help rehabilitate him any more

20　or will do anything to protect society any more.  After nine

21　years I think the overall effect of any additional time in

22　prison would only be to hinder his ability to move forward in

23　life.

24　　　　　He'll be 47 years old next month, he'll been in his

25　mid-50's by the time he gets out and I think it is safe to say

1   by now that there is an inverse correlation between age and

2   recidivism and there's not much proof that recidivism is

3   influenced by adding on more time to the time somebody has

4   already served.  There comes a point in terms of using

5   incarceration as a means of correcting someone's behavior

6   where enough is enough and I just don't think that any of the

7   goals and purposes of criminal sentencing will be advanced by

8   adding more time on to that.

9           I also just want to note that Mr. Thomas was born

10  with a congenital heart condition, I think that's had a hold

11  on him for a while and that is one other thing that I hope

12  Your Honor takes into consideration with respect to his age

13  and how old he will be when he gets out regardless of what

14  happens in this case.

15          Thank you.

16          THE COURT:  Thank you.

17          Where is he designated to, or hasn't he been

18  designated yet?

19          MR. ANDERSON:  I don't believe he's been designated.

20          MR. STERN:  He hasn't been designated because

21  they're still doing testing on his heart.  I assume he'll be

22  designated to Fairton or Springfield or Devens, one of the

23  medical facilities.  I think in the past he's been in medical

24  facilities.  So, the designation has been held up because he

25  has a cardiologist here in the city where they bring him for

1  testing.  I suppose once they reach whatever conclusion they

2  reach, then he'll be designated.

3          THE COURT:  Okay.  Thank you.  Let me hear from the

4  defendant himself.

5          Mr. Thomas, is there anything you'd like to say?

6          THE DEFENDANT:  No, Your Honor.  Thank you.

7          THE COURT:  All right.  Thank you.

8          Ms. Cooley, anything from the government?

9          MS. COOLEY:  Your Honor, we rest on the Probation

10  Department's submission and recommendation that a guideline

11  sentence of 7 to 13 months would be appropriate in this case.

12          THE COURT:  All right.

13          Anything further from over here, the defense table,

14  Mr. Anderson?

15          MR. ANDERSON:  No, Your Honor.

16          THE COURT:  All right.  I agree with most of what

17  your able counsel has argued, Mr. Thomas, that is, really not

18  any good is going to come from lengthening your already

19  planned period of incarceration, certainly no rehabilitative

20  goal and the like with one exception; you know, one goal of

21  sentence is just to punish, just to convey to you and to the

22  community the blameworthiness of what you did and I feel the

23  need to do that.

24          I don't mean to be threadbare in my findings of

25  fact, I know you went to Pratt obviously to -- not obviously,

1 I find you went to Pratt to once again see this woman in the

2 wood shop -- what was her name, Wheeler?

3          MS. COOLEY:  Julia Wheeler, Your Honor.

4          THE COURT:  Julia Wheeler, with whom you had some

5 prior date or encounter, depending on who you ask, and while

6 you were there subjected this Ms. Ogiura -- I'm not sure how

7 you pronounce it, it's spelled in the transcript O G I U R A;

8 is that the correct spelling?

9          MS. COOLEY:  Yes, Your Honor, I believe it is

10 Ogiura.

11          THE COURT:  Okay.  Subjected her to a visual of this

12 sex act engaged in in the hallway and that deserves

13 punishment.  I don't want to dwell on it but you just can't

14 engage in that kind of behavior and not expect to be punished.

15 It's not exactly the kind of conduct we see often around here

16 so for me evaluating the gravity of this offense was, before

17 this, uncharted territory.  The only thing I can remember that

18 came close to it is the Paine case which I threw out.

19          Obviously here I haven't thrown it out.  I do feel

20 you need to be punished for it.  I've struggled harder than

21 you would probably guess in trying to do justice here and

22 punish you appropriately for this conduct.  In my view the

23 advisory guidelines range is a little too severe and the

24 sentence that in my view reflects the seriousness of your

25 criminal activity is four months in the custody of the

1  Attorney General and because it's separate and distinct from

2  the acts for which you're serving the prison sentence imposed

3  by Judge Marrero, I'm going to impose that sentence to run

4  consecutive to the undischarged term of imprisonment you're

5  currently serving.

6         You have a right to appeal from my finding that

7  you're guilty of this public lewdness charge and of this

8  alleged violation and a right to appeal from the sentence I've

9  imposed.  If you want to do that, you have to file a notice

10 within ten days or you lose your right to appeal.  If you

11 can't afford a lawyer to represent you, one will be appointed

12 for you just as Mr. Stern and Mr. Anderson have been appointed

13 for you in the proceedings here before me.  Do you understand

14 that?

15         THE DEFENDANT:  Yes, I do, Your Honor.  Thank you.

16         THE COURT:  I think the open counts went by the

17 boards, right, with that ruling I made?

18         MS. COOLEY:  Yes, Your Honor, I think you dismissed

19 the remaining counts, charges two through four.

20         THE COURT:  All right.  And do we know which docket

21 number this one remaining violation is in?

22         MS. COOLEY:  I think it's both, I think it's at

23 least 02-CR-441 and 11-CR-693, Your Honor.

24         THE COURT:  So, it is a violation in my case?

25         MS. COOLEY:  I believe that the supervised release

1  terms were imposed concurrently --

2          THE COURT:  Oh.

3          MS. COOLEY:  -- in both cases but I will check that,

4  Your Honor.

5          THE COURT:  Would you check that.

6          MS. COOLEY:  I will file something right after this

7  proceeding.

8          THE COURT:  Please.

9          And don't just be quiet if you think I'm doing it in

10 the wrong docket number, discharge your duty as an officer of

11 the court and let me know where in --

12         MR. STERN:  If I knew I would tell you, you can be

13 sure.  I really don't know.

14         THE COURT:  -- this tangled web of referrals and

15 transfers of jurisdiction and supervised release terms

16 emanating from the case before me more than 12 years ago, give

17 me a hint as to what the proper location of this judgment

18 ought to be.  Ilene will probably figure it out without us but

19 I want your input anyway.

20         MR. STERN:  We would like permission to order these

21 minutes.  Mr. Thomas informs me he does want to appeal and if

22 you want us to, we're glad to do that.

23         THE COURT:  Well, you'll file it and the normal

24 result is continuity of counsel, it will be up to the Court of

25 Appeals whether to keep you but I encourage them to.

1          MR. STERN:  All right.

2          THE COURT:  Okay.

3          MR. STERN:  Thank you.

4          THE COURT:  Thank you.

5          Have a good day.

6          And you'll make those exhibits available to the

7     press please.

8          MS. COOLEY:  Yes, Your Honor.

9          (Time noted:  Three o'clock p.m.)

10          (End of proceedings.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25