UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                         :
**UNITED STATES OF AMERICA**,                            :
                                                         :
            **-** against **-**                          :   **MEMORANDUM**
                                                         :   **DECISION & ORDER**
                                                         :   02-CR-441 (AMD)
**CHRISTOPHER THOMAS**, a/k/a                            :
**CHRISTOPHER REESE THOMAS**                             :
                                                         :
                            Defendant.                   :
-------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

Currently before the Court is the defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The defendant, who is being treated for heart problems, asthma and other serious health conditions, argues that his poor health makes him vulnerable to COVID-19 and asks that his four-month sentence be modified to time served due to the ongoing pandemic.  (ECF Nos. 266, 269-70, 276, 280.)  The government opposes.  (ECF Nos. 268, 273, 278.)  For the reasons that follow, the defendant's application is granted.

## BACKGROUND

I.  Procedural History

In April of 2002, the defendant was indicted for wire fraud and conspiracy to commit wire fraud in the Eastern District of New York.  (ECF No. 1.)  In August of 2002, he pled guilty to one count of wire fraud conspiracy and eight counts of wire fraud before the Honorable Reena Raggi.  (ECF No. 44.)  The case was ultimately reassigned to the Honorable John Gleeson, who subsequently sentenced the defendant to a total of 115 months of imprisonment and three years of supervised release on the wire fraud conspiracy and wire fraud convictions.  (ECF No. 102.)

1

The defendant commenced his term of supervised release on October 22, 2009. Two years later, on November 1, 2011, he was arrested for exposing himself to a student at Pratt Institute in Brooklyn. (ECF No. 254.) On November 29, 2012, the defendant was charged in the Southern District of New York with bank fraud, conspiracy to commit bank fraud, conspiracy to commit wire fraud and aggravated identity theft. *See United States v. Reese et al.*, No. 12-CR-629 (S.D.N.Y. July 29, 2014). He was convicted after a jury trial before the Honorable Victor Marrero and sentenced to an aggregate term of 108 months of incarceration and three years of supervised release. (*Id.*) On January 30, 2015, after an evidentiary hearing, Judge Gleeson imposed a four-month consecutive term of incarceration in connection with the defendant's 2011 supervised-release violation. (ECF No. 254.)[1]

The defendant is now serving an aggregate sentence of 112 months at FCI Allenwood Low, a low-security facility in Pennsylvania. He is scheduled to be released in December of 2020.

II. The Defendant's Application for Release

In an April 8, 2020 email, the fifty-two-year-old defendant asked his facility's warden for compassionate release. (ECF No. 276-1 at 12-13.) Describing himself as a "life-long cardiac patient" with congestive heart failure, dilated cardiomyopathy, asthma and epilepsy, he asked the warden for "immediate placement on Home Confinement" because of his "high level of susceptibility" to COVID-19. (*Id.*) The warden denied the defendant's request the next day, stating that the defendant could not be released to home confinement because according to his risk score, he has a "low" rather than "minimum" risk of reoffending. (*Id.*)[2] The defendant

---

[1] The case was reassigned to me on June 23, 2016.
[2] This determination appears to have been based on the Attorney General's guidance directing the BOP to prioritize placing any inmates with a "minimum" PATTERN risk score in home confinement.

asked the warden to reconsider her decision; that request was also denied. (*Id*. at 12.)

On April 10, 2020, the defendant moved *pro se* before this Court and before Judge Marrero asking that his sentence be modified due to the COVID-19 pandemic. (ECF No. 266.) He also requested that the Court appoint counsel. (*Id.*) On April 13, 2020, Judge Marrero denied the motion because the defendant had not exhausted his administrative remedies before he filed the motion. *United States v. Reese*, No. 12-CR-629 (S.D.N.Y. April 13, 2020).[3]

I asked the government to respond to the defendant's application and provide a status report on the defendant's prior requests for release. (ECF Nos. 268, 273.) On April 28, 2020, pro bono counsel appeared for the defendant and asked me to defer ruling on the defendant's application. On April 24, 2020, the defendant, now represented by counsel, submitted a second request to the warden asking the BOP to reduce his sentence under 18 U.S.C. § 3582(c). (ECF No. 276-1 at 16.) According to the government, the warden denied his second request on May 6, 2020. (ECF No. 278 at 2.) In a hearing on May 13, 2020, I heard argument from both sides and granted the parties' request to submit additional post-hearing briefing on the defendant's motion. Both parties also submitted supplemental letters to the Court.

## DISCUSSION

18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018) (the "First Step Act"), sets forth the conditions under which a court may modify a term of imprisonment upon a motion from the director of the Bureau of Prisons or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse

---

[3] Judge Marrero denied the defendant's subsequent motion for compassionate release on the same grounds, and also held that the defendant had not demonstrated that "extraordinary and compelling reasons" merited his release. *United States v. Reese*, No. 12-CR-629 (S.D.N.Y. May 20, 2020).

3

of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). If a defendant exhausts his administrative remedies, Section 3582 permits the Court to reduce a term of imprisonment or supervised release "after considering the factors set forth in section 3553(a) . . . if [the Court] finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. To grant relief under Section 3582(c)(1)(A), the Court must conclude that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2); *see, e.g.*, *United States v. Urso*, No. 03-CR-1382, 2019 WL 5423431, at *2 (E.D.N.Y. Oct. 23, 2019).

I.  Section 3582(c)(1)(A) Exhaustion Requirements

Before I can consider the merits of the defendant's compassionate release motion, he must meet the exhaustion requirements set forth in Section 3582(c). *United States v. Scparta*, No. 18-CR-578, 2020 WL 1910481, at *4 (S.D.N.Y. Apr. 20, 2020). The defendant can overcome this hurdle in either of two ways: (1) by "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf[,]" or (2) after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Although the government appeared to concede at the hearing that the exhaustion requirement did not bar the defendant's release (*see* ECF No. 280-1 at 4:17-5:11), it now takes the position that the defendant has not exhausted his remedies, and that the exhaustion requirement is not "amenable to judge-made exceptions." (ECF No. 278 at 2.) I need not resolve that question, because thirty days have now passed since the defendant's last request to

4

the warden.[4]  The defendant first asked to be released to home confinement on April 8, 2020.[5]  After obtaining counsel, he applied again on April 24, 2020, this time clarifying that he was seeking compassionate release under the relevant statutory provision.  Thirty days have now passed since the defendant submitted both requests.  Regardless of which request is operative for purposes of the exhaustion requirement, the claim that the defendant did not exhaust his administrative remedies is now moot.  *See United States v. Morris*, No. 12-CR-154, 2020 WL 2735651, at *5 (D.D.C. May 24, 2020) (Section 3582(c)(1)(A) "explicitly allows a defendant to file a compassionate release motion before he has exhausted his administrative remedies so long as he waits 30 days.").  The defendant has therefore satisfied the exhaustion requirement, and his motion is now properly before this Court.

II.     The Defendant Qualifies for Compassionate Release

Once a defendant meets the exhaustion requirement, Section 3582 permits the Court to reduce the defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction[.]"  The defendant bears the burden of demonstrating that "extraordinary and

---

[4] Judges in this district and the Southern District have exercised discretion to waive the exhaustion requirement in light of the pandemic.  *Compare United States v. Livingston*, No. 18-CR-416, 2020 WL 1905202, at *1 (E.D.N.Y. Apr. 17, 2020) (waiving requirement) *and United States v. Russo*, No. 16-CR-441, 2020 WL 1862294, at *6 (S.D.N.Y. Apr. 14, 2020) (waiving requirement) *with United States v. Roberts*, 18-CR-582-5, 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) (declining to waive).

[5] The parties dispute whether this request triggered the thirty-day clock.  In his first request, the defendant did not explicitly cite Section 3582(c), but he was proceeding *pro se* at the time.  Accordingly, I construe his request liberally and "interpret [it] to raise the strongest arguments that [it] suggest[s]." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also United States v. Pilcher*, 950 F.3d 39, 44 (2d Cir. 2020) ("It is well established that courts liberally construe pleadings and briefs submitted by pro se litigants[.]").  Under those circumstances, where "[the defendant's] Motion addresses many of the factual considerations germane to a compassionate release request brought under § 3582, and requests substantially the same remedy, the Court thinks it warranted to construe his Motion as bringing a § 3582 compassionate release request." *United States v. Rountree*, No. 12-CR-0308, 2020 WL 2610923, at *3 (N.D.N.Y. May 18, 2020); *see also United States v. Resnick*, No. 14-CR-810, 2020 WL 1651508, at *6 (S.D.N.Y. Apr. 2, 2020) (federal prisoner exhausted his remedies as required by Section 3582(c)(1)(A), even though his initial request to the BOP for compassionate release did not mention COVID-19 or rely on his health, based on the assumption that the BOP acts with "some modicum of common sense").

compelling reasons" merit a reduced sentence. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.").

A court considering a defendant's motion "is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community." Application Note 4, U.S.S.G. § 1B1.13. Of particular relevance are the notes to U.S.S.G. § 1B1.13(2), which state that evidence of a "serious physical or medical condition" may constitute an "extraordinary and compelling reason" for reducing the defendant's sentence. Application Note 1, U.S.S.G. § 1B1.13(2).

In his motion and supplemental letters to the Court, the defendant presents evidence of a lengthy and complicated medical history. The question is whether that history, together with the ongoing COVID-19 pandemic, the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in the applicable policy statements, warrants a reduction in the defendant's sentence. The defendant suffers from multiple severe health conditions, chief among them heart failure and cardiomyopathy, epilepsy, asthma, hyperlipidemia, diabetes, atherosclerosis and hypertension. His "known cardiac history . . . includes recurrent patent ductus and cardiomyopathy," a "history of multiple congenital birth defects" affecting his heart, and a later diagnosis of cardiomyopathy and ejection fracture. (ECF No. 276-1 at 2-10.) The defendant also has a family history of stroke and hypertension. (*Id.*) According to his medical records, these conditions and his cardiac history place him at higher risk of heart failure, and he has been "strongly" recommended

for surgical placement of a cardiac catheter. (*Id.* at 6.) In addition to his cardiac history, the defendant takes eight medications to manage his remaining conditions, including aspirin, Atorvastatin, Carvedilol, and Lisinopril for his hypertension and heart conditions, an albuterol inhaler to manage his asthma and nitroglycerin for angina. The defendant also takes additional medications to manage edema, epilepsy and symptoms related to gastroesophageal reflux disease. (*Id.* at 3.) While the defendant has been receiving regular treatment and care while in BOP custody, his medical records note that he has "serious ongoing issues." (ECF No. 276-1 at 2.)

Under normal circumstances, these conditions might not warrant a reduced sentence. However, following the outbreak of COVID-19, the CDC has said that three of these conditions—diabetes, asthma and serious heart conditions—place individuals like the defendant in the "Groups at Higher Risk for Severe Illness" from COVID-19. *See* Cleveland Clinic, What Heart Patients Need to Know About COVID-19 (last updated May 6, 2020), https://health.clevelandclinic.org/what-heart-patients-need-to-know-about-covid-19; Centers for Disease Control and Prevention, Groups at Higher Risk for Severe Illness (last updated May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html; *see also* Mayo Clinic, COVID-19: Who's at higher risk? (last updated Apr. 9, 2020), https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-who-is-at-risk/art-20483301. According to CDC guidance, the defendant's complex medical history not only increases the possibility he will contract COVID-19, but also places him at higher risk of suffering serious, potentially fatal complications if he contracts the virus. Therefore, the defendant's significant medical history and his increased vulnerability to COVID-19, in combination with the fact that the defendant has already served almost the entirety of his total

7

term of imprisonment, constitute an extraordinary and compelling reason justifying his release.[6] Other courts have released defendants who are diagnosed with the same medical conditions as the defendant, either alone or in combination with other conditions. *See, e.g.*, *United States v. Williams*, No. 3:17-CR-121, 2020 WL 1974372, at *3-4 (D. Conn. Apr. 24, 2020) (hypertension, asthma and diabetes); *United States v. Bess*, No. 16-CR-156, 2020 WL 1940809, at *8 (W.D.N.Y. Apr. 22, 2020) (serious heart problems, diabetes and hypertension); *Samy v. United States*, No. CR 16-20610-1, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020) (hypertension, congestive heart failure, diabetes and asthma); *United States v. Sawicz*, No. 08-CR-287, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (hypertension); *United States v. Burrill*, No. 17-CR-00491-RS-1, 2020 WL 1846788, at *3 (N.D. Cal. Apr. 10, 2020) (asthma, hypertension and diabetes, among other conditions); *United States v. Zukerman*, No. 16-CR-194, 2020 WL 1659880, at *4 (S.D.N.Y. Apr. 3, 2020) (hypertension, diabetes and obesity).

The government does not challenge the severity of these conditions, but argues that the defendant has not shown he would be safer if he were released than he would be in BOP custody at FCI Allenwood. Although the public's understanding of COVID-19 continues to evolve, it is reasonable to conclude that the defendant is less likely to be exposed to COVID-19 if he serves the remainder of his sentence confined to his niece's home than in a densely occupied facility that houses hundreds of inmates, corrections officers and staff, with whom the defendant is in daily contact. It is for this reason that the Attorney General issued two memoranda directing

---

[6] On June 2, 2020, the defendant submitted a supplemental letter (*see* ECF No. 282) alerting the Court that in recent compassionate release cases, the DOJ has taken the position that "inmates who suffer from a condition identified . . . as putting them at higher risk for severe illness from COVID-19 and who are not expected to recover from that condition, present an 'extraordinary and compelling reason' to be considered for compassionate release." *Wise v. United States*, No. CR ELH-18-72, 2020 WL 2614816, at *6 (D. Md. May 22, 2020). The government has not taken this position in the defendant's case.

facilities to screen "aggressively" all inmates for potential placement to home confinement if inmates meet certain criteria. *See* Update on COVID-19 and Home Confinement, available at https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (last updated April 5, 2020). Whether or not COVID-19 has struck FCI Allenwood Low does not change this analysis.[7] Unlike other members of the inmate population, the defendant's numerous, serious medical conditions place him at grave risk if he were to contract or be exposed to COVID-19; it is the unique risk of exposure, and his inability to be isolated from others while incarcerated that warrant a reduction in sentence.

Consideration of the factors set forth in 18 U.S.C. § 3553(a) and applicable policy statements support the defendant's release. The defendant has now served more than 90 percent of his total sentence. Although the nature of the defendant's violation of supervised release is serious, a sentence of time served does not undermine respect for the law or otherwise conflict with the Section 3553(a) factors. Nor is additional time in custody necessary to protect the public. In the context of a 112-month sentence, the vast majority of which the defendant has already served, "requir[ing] [the defendant] to remain in detention for [four] more months, when there is a real chance that he could develop a severe illness because a pandemic has emerged and conditions of confinement place him at risk given his medical history, would be to require a sentence that is greater than necessary to achieve the purposes of sentencing." *United States v. Levy*, No. 16-CR-270, 2020 WL 2393837, at *7 (E.D.N.Y. May 12, 2020).

As the defendant acknowledges, even if I grant his motion to reduce the four-month term for violating supervised release, I cannot order his immediate release because the defendant has

---

[7] On June 4, 2020, the government asked me to defer ruling on the defendant's motion until July 10, 2020, to allow the government additional time to submit an updated status report on the defendant's medical condition and conditions at FCI Allenwood. (ECF No. 283.) However, because the defendant has already shown that he meets the requirements set forth in Section 3582(c), there is no basis for deferring this ruling.

at least two months remaining on the sentence imposed by Judge Marrero.  Nevertheless, he will become eligible sooner than he otherwise would have been for an earlier release date and transfer to home confinement.

## CONCLUSION

For the reasons stated above, the defendant's motion for compassionate release is granted.  The Court resentences the defendant to time served on the violation of supervised release.  All other conditions remain unchanged.

**SO ORDERED.**

        s/Ann M. Donnelly
Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
      June 16, 2020